The United States Court of Appeals for the Circuit is now in session. Good morning. I'm Judge Gould and I'm presiding today. We only have one case on our argument docket and it turns out to be Brown v. Atchley. So for the appellant, we have Mr. Parkman and for the appellee, Mr. Ott. The case is set for 10 minutes per side. And in general, if you want to make a rebuttal argument, Mr. Parkman, technically you should stop before you're all, 10 minutes is up. Now we're given the fact that we only have 20 minutes of argument today. I promise to be a softy if you ask for more time. Without further ado, we could, if both my colleagues are ready, I'll just say I'm delighted to be sitting with Judge McEwen, Judge Aikuda. We all appreciate the advocates appearing remotely for us today. Let's go forward on the appellant's argument. Thank you, your honor. Good morning and may it please the court. I'm Kenny Parkman from the Office of the Federal Public Defender for the petitioner appellant, Gregory Brown. I'm in the somewhat envious position of appearing before the court in a case where the state has conceded that the order dismissing Mr. Brown's habeas application must be reversed. That is because the parties agree that his habeas application challenging the denial of his state court resentencing petition was not second or successive under Clayton v. Bider. And I ask the court to reverse on that basis. Before argument, this court issued an order instructing the parties to be prepared to discuss two cases, People v. Hampton, a 2022 decision from the California Court of Appeal, and United States v. Wayne Rostro, a 2011 decision from this court. In response, the parties submitted separate letters under Rule 28J in which they again agree that Hampton does not affect the required outcome of this case and that Wayne Rostro supports reversal. I'd like to add just one more point to the letters, which is that Hampton is an intermediate state court decision. So even if it were contrary to Clayton's analysis of what a new judgment is under state law, this court is still bound under Clayton because of Miller v. Gammy, because Hampton is not a decision from the Court of Last Resort or from the U.S. Supreme Court or from the United States Supreme Court. So Clayton didn't address the denial of resensing petition under 1170. My understanding is 1170.126 is different than 1170.95. Clayton addressed the denial of resensing petition under 1170.126. So it wasn't clear to me that Clayton was directly on point here. What are your thoughts about that? I have two thoughts, Your Honor. I'm sorry, the audio cut out a little bit, so I think I understand the question. So if I don't respond completely, please let me know and I'll try again. But I have two points. One is the state has not made that argument. So under the party presentation principles of the United States v. Sanding Smith, I think the court should accept the state's concession that the two statutes, 1170.126 and 1170.95, are identical for these purposes. And my second point is my understanding of the way the two statutes works and the way that Hampton actually analyzed them as analogous provisions is that both have this threshold determination that a person is eligible and that is followed by an ultimate decision about resentencing. So I don't believe that there is a difference under state law between those two provisions. Do you think it makes a difference that in Hampton the court was focused on state law with respect to appealability? So it makes a difference in terms of the ultimate outcome. I don't think so for two reasons. One is the Miller v. Gamie reason I explained before. And second, I think in Hampton, the court was interpreting what a judgment is in a very narrow, specialized context that has to do with when the state or the government can appeal from orders that are adverse to the government, which is different from the more broad, generic use of the word judgment that Clayton found relevant relying on Teal v. Superior Court, a 2014 decision from the state Supreme Court, which interpreted California Penal Code 1237, which is the relevant provision here. And I think the government has a very useful citation in its Rule 28J letter to California Rule of Court 8.10 subsection 4 that confirms the broad definition of judgment that is relevant here and that Clayton relied on. Neither Teal nor Hampton referred to this order, this denial, or this ruling as a judgment. They both said it was a post-judgment order. Is there any California case defining a ruling on 1170.95 as a judgment or as the Supreme Court has said, a custodial judgment? Well, I will point to California Rule of Court 8.10 subsection 4, which defines a judgment as includes any judgment or order that may be appealed. Is that in a criminal context? The California Rules of Court apply, it's my understanding, in civil cases and criminal cases. But the custodial judgment is what the Supreme Court has said in Magwood and other cases is what's significant in the habeas ed context. So I'm trying to understand what the California courts say is a new custodial judgment, which is what Hampton was focusing on. Is there any California case that supports your argument? I'd say that in Mr. Brown's actual appeal from the denial of re-sentencing, so that's at ER 43, the California Court of Appeal called its decision a judgment. It said that the judgment of the district court is affirmed. So that's, I think that answers that. Is there any case that actually supports that it's a new custodial judgment in the sense that Hampton understood and Magwood understood? Obviously the word judgment could be used for any ruling, but not any ruling is a new custodial judgment for purposes of HEDPA. Well, I would say that Clayton actually made two rulings in that context. It first interpreted the word judgment under federal laws. It's used at 2258 U.S.C., 2254. And it said that a judgment in that context need not be a conviction and sentence. It could actually be... I understand what Clayton said. I was asking a different question, whether there was any California opinion that supported your position on 1170.95. And I think that Clayton's interpretation of Teal v. Superior Court supports that position. I think it equates post-judgment order with judgment. And I think the whole point is that it's not a new custodial judgment because then it would be second or successive. It's just a new, it's not a new custodial judgment. If a post-judgment order is a new judgment, then Hampton was wrongly decided because the state would not have been able to appeal it based on your analysis. Well, I think that Hampton actually, the way Hampton decided the issue was that there are some decisions called judgments, some decisions called orders. And it matters in this narrow context because, like in federal court, the government can't appeal certain judgments and it can from certain orders. But it held that this particular, the grant of a resentencing petition, which does result in a new judgment, contains within it a post-judgment order that is appealable. So it kind of subverted this dichotomy between judgment and order by saying that even the judgment may contain within it a post-judgment order. But it relies on, I believe, a decision. I think it said pretty clearly it was a post-judgment order and therefore was appealable by the state. And had it been a new judgment, it wouldn't have been appealable because of the double jeopardy issue. So I'm not sure your reading of Hampton makes sense to me. My concern, and I'll just jump in here because I know you're running out of time. It seems to me Hampton is unusual because you're talking about the government appeal and you have these special rules in California. But that aside, would we even need to parse this judgment if we were to go to the ripeness issue as presented in Gwen Rostrow? No, you would not, Your Honor. So I agree that Gwen Rostrow supports a reversal on an independent alternative ground. So the court would not need to delve into that issue if it follows that. And I think the government, the state has said that within Clayton, Gwen Rostrow is an additional rationale, a ripeness rationale, because this particular claim about resentencing was not ripe until Mr. Brown had completed litigating his initial habeas application. And I'll just say that in Hampton, I think Rivera would. So it's a California Court of Appeal decision from 1984, which talks about how the government can't appeal a new judgment. And the Hampton court distinguishes Rivera by saying that there the defendant was actually appealing the actual ultimate sentence. Whereas in Hampton, he is appealing the part of the order that's not the ultimate sentence, but it's just the threshold finding of eligibility, which supports my interpretation that it contains within it this appealable post-judgment order part. And with that, I ask the court to reverse. I have a question for you. Yes, sir. Do we reverse here or do we vacate and remand? The result will be to remand back to the district court to determine, to litigate the habeas appeal. And the judgment would be that it's not second or successive. Dave, thank you. Thanks, Mr. Parkman. You used all your time with our questions, but I'll give you two minutes time for rebuttal after Mr. Ott concludes his argument. Thank you, Your Honor. Mr. Ott. Good morning and may it please the court. Gregory Ott for appellee respondent. Let me be clear right off the bat, and my apologies for using the term judgment loosely or without some clarification. Our position is this is not a custodial judgment. This isn't a new custodial judgment. It's an appealable order. I use the term loosely, and I apologize for that because it can mean different things in different contexts. But this was not the custodial judgment. It didn't affect the custodial judgment. But the term judgment, as you can see in this case, and I'll give you another example, is used generically. It was used by the court of appeal here in saying the judgment's affirmed until the California Supreme Court. Now, that was discussed in Clayton until the court finds that the order at issue was an appealable order, not a judgment. And yet at the end of the case, they say the judgment of the court of appeal is affirmed and the underlying judgment is affirmed. It confuses things, admittedly, but they're not referring to a custodial judgment. The basis for our concession is this petition for resentencing was based on legislation that arose after the first-in-time petition, and it does not challenge the custodial judgment. It is entirely separate. And Clayton, I think, Clayton itself makes that really clear, although it confuses things by using the term judgment. It makes it clear that a petition for resentencing does not challenge the custodial judgment.  That sounds more like, as Judge McKeon was saying, that sounds more like it wasn't right to challenge this denial of the sentencing petition or resentencing petition until the legislation happened and he actually had a denial of the resentencing petition. So that sounds more like a rightness issue. And I understand you agree that when Rostro and that line of cases, the Panetti line of cases applies here. Is that correct? That's correct, Your Honor. Rightness is analogous. I hesitate to use the term rightness because it suggests that it's cognizable, but we're putting cognizability aside, obviously, in this court. So assuming that, then yes. Rastucci also is quite similar in that regard. He's challenging a separate judgment, denying him parole. It's separate from the custodial judgment and it's separate from, well, I'm sorry, later in time. So it's based on events that arose after. So our concession is really based on that rightness, if you will, theory, not that this is a change or intervening custodial judgment. I hope that answers your question. Yes. So it's second in time, but it's a distinct ruling that is or a distinct factual event that's as challengeable under the Panetti. I don't want to use the term rightness cases. Is that what you're saying? Yes, Your Honor. And I think that's part of part of Clayton's analysis. It is the chronology of events, but yes. This was unavailable to him at the time of his first habeas, correct? That's correct. Both the legislation and the filing of his petition for resentencing arose later. Did the court have any other questions about the term judgment? I know, Judge McKeown, you had questions about Hampton, I believe. And I agree with Mr. Parkman's description of it. It's difficult to compare that case because it was dealing with the people's right, and that is much more limited. And that they were challenging that initial threshold, which also makes it a little more confusing, versus the actual sentence that was imposed. Because that was a grant of resentencing. Ultimately, in Hampton, there was a new judgment, which is the sentence. I think Hampton itself, I believe that page... That's how I read it. That's right, Your Honor. That's how I read it as well. Go ahead. I don't understand how it's a post-judgment order for purposes of whether the state can appeal it or not, but not a post-judgment order for purposes of federal law. I don't understand how that could be, since Clayton tells us that we look to state law for a definition of what is a new judgment for purposes of AEDPA. Are we talking about a new custodial judgment? For Magwood and that line of cases, for purposes of AEDPA, it has to be a new custodial judgment. Well, our position is it's not. In fact, in Hampton, they were saying it's not, and it's not a custodial judgment, and that's why he could appeal. Again, it goes back to my admittedly loose use of the word judgment to simply mean the decision. I should have clarified that from the get-go. We did not mean that it was a custodial judgment. That's basically that it was an event or an order that was appealable, assuming it's cognizable, that he could not have challenged before. Thank you. Mr. Parkman pointed out that's a California intermediate court. That's right. I am not aware of any California decision deeming a denial of a 1170.95 a custodial judgment. The denial also, the threshold denial, is simply a non-event with regards to his custody. Had he proceeded to resentencing and he ultimately been resentenced, then we would have a new custodial judgment, and that's one of the things that Hampton uses to distinguish one of the cases, I think it's Rivera, by saying that in that case, it resulted in challenging an order made after judgment rather than the judgment itself. I'm sorry, that's not it. The sentence imposed at the resentencing thus became the judgment, and that's why in Rivera, the people could not appeal that. So this obviously is not that scenario. We did not get there, or he did not get there. If the court has any further questions, I'd be happy to do my best to answer them. If not, I'll submit it. No questions from me. No questions. Thank you. Okay. Thanks, Mr. Ott. Mr. Parkman, we're giving you two minutes for rebuttal. Thank you, Your Honor. You don't need to use it all if you don't need to, but you may do that. I appreciate it. Just one point in rebuttal, just to clarify what Clayton did. Clayton made two moves. First, it interpreted the word judgment under federal law, and it concluded that under Magwood, judgment as it's used in the federal habeas statute does not require custodial judgment. A new judgment may leave in place the same sentence and the same conviction. Then, it looked to state law to determine what is a judgment under California law. After the first step, it concluded that a denial of a resentencing petition, which leaves in place the same conviction and the same sentence, may be a judgment as it's used in federal law and consistent with Magwood. I think Clayton strongly implied that this was a custodial judgment, rightly or wrongly. I don't see Clayton as going against Supreme Court precedent and saying it's not a custodial judgment. Can you point me to any language to that effect? Yes, Your Honor. It says, in sum, as in Magwood, Clayton's current habeas petition does not attempt to challenge his underlying conviction. Rather, he seeks only to challenge a new and intervening judgment denying him relief with respect to his sentence. So, it's a sentencing judgment. Obviously, it didn't challenge his conviction. It challenged his sentence, but we say that the sentence is a custodial judgment. I think the part where it's saying it only seeks to challenge the denial of relief with respect to the sentence, that adheres in it that it's not a new sentence. It's a denial of a potential new sentence. It's a question of interpreting that language, but I would assume that Clayton wasn't being inconsistent with Supreme Court precedent. I think we should probably infer that it was saying that that was a custodial judgment. Since there's no language directly to the contrary, I think that would be a better interpretation. I understand, Your Honor. In that case, there is no difference between 1170.126 and 1170.95. The alternative, the ripeness doctrine, requires reversal as well. With that, I submit. Thank you, Your Honors. I want to thank both counsel, Mr. Parkman and Mr. Ott, for your excellent advocacy. This case, which I had initially thought was simple, instead, after being unpacked, has a great many very difficult issues. And we're glad that you've helped guide us through them. Without further comment, the case of Brown v. Ashley shall now be submitted. And the parties will hear from the panel in due course. Thank you. So I have some other things I have to put on the record before we depart for the day. Brown was the only case being argued, but we do have other cases on our docket today. I'll just mention them. One case is Bruce Wanzo v. Christian Pfeiffer. It's number 256072. That case is submitted on the briefs. Another case is United States of America v. Daniel Sessom Lynch. That's number 2210063. That case is submitted on the briefs. The next case on the docket is Gretchko v. Velasco Gaspar, number 2215295. That case is submitted on the briefs. The next case on the docket is Ferreira v. Kijikazi, number 2215906. That case is submitted on the briefs. The next case is Duarte v. Kijikazi, number 2116019. That case is submitted on the briefs. And finally, the last case on the docket is AB v. Chart, Inc., number 2117016. That case had its oral argument postponed, and so it won't be discussed today. That concludes our session. Unless Judge McEwen or Judge Aikuda have different comments. And if not, we'll say thank you, and we will adjourn the courtroom argument and proceed to conference. This court for this session stands adjourned.
judges: McKEOWN, GOULD, IKUTA